**ALLEGHENY LUDLUM CORPORATION,**
Plaintiff,

v.

**NIPPON STEEL CORPORATION, et al., Defendants.**

Civ. A. No. 89–5940.

United States District Court,
E.D. Pennsylvania.

Feb. 4, 1991.

Dawn DiStefano, David A. Hartquist, Jeffrey W. King, Patrick J. Coyne, Collier,

---

Shannon, Rill & Scott, Washington, D.C., John B. Williams, Mark L. Austrian, John Woodall, Savannah, Ga., Jon D. Walton, Patrick J. Viccaro, Allegheny Ludlum Corp., Pittsburgh, Pa., Daniel Segal, Claire Rocco, Philadelphia, Pa., for plaintiff.

Thomas K. Lammert, Reed Smith Shaw & McClay, Arland T. Stein, Pittsburgh, Pa., for Armco, Inc. 231 Only.

Alan J. Davis, David M. Doret, Philadelphia, Pa., Edward W. Greason, Alan T. Bowes, John A. Fogarty, John J. Kelly, Jr., Gregg A. Delaporta, Michael D. Loughnane, Kenyon & Kenyon, New York City, for Nippon Steel Corp., Nippon Steel U.S.A., Inc., Mitsui & Co. U.S.A., Inc., and Mitsui & Co. (U.S.A.), Inc.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the Court is Defendants Nippon Steel Corporation, et al. ("Nippon")'s Third Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Grandfather Clause). In this case, the plaintiff ("Allegheny") is the owner of United States Patent No. 3,855,018 ("the '018 patent"), which is a process patent for the production of steel. The plaintiff is suing Nippon Steel Corporation and Mitsui & Co. Ltd.[1] for infringement of the patent pursuant to 35 U.S.C. § 271(g). Our jurisdiction is pursuant to 28 U.S.C. § 1331.

Under Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This court is required, in resolving a motion for summary judgment pursuant to Rule 56, to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the evidence of the nonmoving party is to be believed, and the district court must draw all reasonable inferences in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513–14. Furthermore, while the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The Process Patent Amendments Act (the "Act") allows United States process patentholders to sue foreign companies who manufacture products using the process described in the United States patent and then ship the goods for sale into the United States. The Act also contains a clause which reads:

> [the Act] shall not abridge or affect the right of any person ... to continue to use, sell, or import any specific product already in substantial and continuous sale or use by such person in the United States on January 1, 1988, or for whch substantial prepraration by such person for such use or sale was made before such date, to the extent equitable for the protection of commercial investments made or business commenced in the United States before such date.

P.L. 100–418, Section 9006(b), 102 Stat. 1567.

Nippon claims the protection of this Grandfather Clause to avoid liability for its alleged infringement of Allegheny's patent.

---

1. Although the docket may not reflect the fact that these are the two remaining defendants, counsel for plaintiff stated in oral argument held before this court on November 16, 1990 that the only two defendants in this case are Nippon Steel Corporation and Mitsui & Co., Ltd. *See, e.g.,* Hearing Transcript, at 17.

Although no case law has been decided on this subject, it seems clear that the Grandfather Clause was only to be used to protect domestic companies and interests during the transition from enactment of the law to the time that these companies were able to obtain new sources of the product.

Congress made it clear in the legislative history to this Act that the target of the statute was the foreign manufacturer. The original proposed wording of the statute was that the statute would not abridge or affect the right of any person to continue to use, sell, or import any specific product "already in substantial and continuous commercial production ... or for which substantial preparation for production was made to the extent equitable for the protection of investments made or business commenced before that date." The new and adopted language of the Act limited the protection to products "in substantial and continuous sale or use by such person in the United States." This restriction showed Congress's intent to protect persons in the United States, not the foreign manufacturers of the goods.

A statement from Donald W. Banner, President of Intellectual Property Owners, Inc., explained the reasoning behind the change in the wording. He said,

> Maximum incentives for patent owners to manufacture in the United States would be achieved by deleting the [original wording quoted *supra*]. We see no compelling reason to allow foreign manufacturers who are currently taking a free ride on the R & D investments of U.S. process patent owners to be allowed to continue to do so. If the second sentence is retained, the phrase "commercial production" should be changed to [the wording adopted by Congress].

Process Patents, 1985: Hearing before the Subcommittee on Patents, Trademarks and Copyrights of the Senate Committee on the Judiciary, 99th Cong. 1st Sess. 57 (1985) (statement of Donald W. Banner, President Intellectual Property Owners, Inc.).

■ Furthermore, in the Senate Report regarding the Act, the Senate Committee stated, "The primary target of the U.S. process patentholder will naturally be the manufacturer, who is practicing the process and importing the resulting goods in the United States.... In any case, the Committee does not expect or intend the bill to be used to sue purchasers of the product, when the infringing manufacturer can be sued instead." S.Rep. No. 100–83, at 39, 47. Clearly, then, the first portion of the Grandfather Clause was only to apply to persons in the United States who are not allegedly infringing manufacturers; Nippon and Mitsui are both Japanese corporations who are the alleged infringing manufacturers.

■ The other argument made by Nippon in relation to the Grandfather Clause was about the clause reading "to the extent equitable for the protection of commercial investments made or business commenced in the United States before such date." Although Nippon does not claim that this clause applies directly to them, Nippon does claim that the businesses to whom Nippon generally sells will be harmed if a damages award against Nippon is allowed.[2]

To apply the clause in this context, I must balance the objectives of the Act as a whole with the interests of the Grandfather Clause. The Act's purpose is to protect United States process patentholders against the infringements of foreign manufacturers who avoid liability by applying the *process* in other countries and selling the subject goods in the United States. The Grandfather Clause's purpose is to help the United States companies shift from these often cheaper, foreign-produced goods to goods produced under the auspices of the Act. Nippon asks me not to apply the Act to them because they may have to raise the price of the steel they sell.

2. When this motion was originally filed, Allegheny was still requesting an injunction against the production of the steel. In the time since the filing of the motion, Allegheny has limited its request to damages from infringement. Therefore, Nippon's arguments regarding the cessation of a Nippon steel supply to the domestic businesses is irrelevant.

This price increase will then allegedly harm domestic businesses.

This argument is not persuasive for several reasons. First, Nippon has already contracted with its American purchasers through June, 1991, so that the only prices that may be affected are those from July, 1991 to November, 1991 (the patent expires in December, 1991). Second, Nippon has made no showing that this potential price increase will harm the domestic businesses in a manner that would outweigh the benefit of the purpose of the entire Act (protecting the domestic patentholders). Third, Nippon has not shown that it would even have to increase its prices to the domestic purchasers for these last few months of the patent's life. Therefore, I can see little reason to allow Nippon to slip through prosecution for alleged infringement of a patent by applying a clause that purports to protect interests in the *United States* only. Nippon has not shown that the domestic interests at issue in the "equitable" clause would be harmed, or at least adversely affected in such a way as to allow Nippon to avoid liability for alleged patent infringement.