PFIZER INC., Plaintiff,

v.

**ACETO CORPORATION, F & S Alloys and Minerals Corporation, Anhui Hefei Flavour Factory and ABC Corporation, Defendants.**

No. 93 Civ. 7160(MEL).

United States District Court, S.D. New York.

May 20, 1994.

Hopgood, Calimafde, Kalil & Judlowe, New York City, for plaintiff; Stephen B.

---

Judlowe, Dennis J. Mondolino, Richard E. Parke, of counsel.

Darby & Darby, New York City, for Defendant F & S Alloys and Minerals Corp.; David R. Francescani, Joseph R. Robinson, of counsel.

Ostrager, Chong & Flaherty, P.C., New York City, for defendant Anhui Hefei Flavour Factory; Glenn F. Ostrager, Dara L. Onofrio, of counsel.

LASKER, District Judge.

Pfizer Inc. sues Anhui Hefei Flavour Factory ("Anhui") and F & S Alloys and Minerals Corporation ("F & S") for patent infringement in violation of 35 U.S.C. § 271(g) (1994).

Anhui is a foreign manufacturer located and doing business in the People's Republic of China. It manufactures a flavor enhancer, known as maltol, by a process which Pfizer alleges is in violation of its patent. It is undisputed that Anhui does not itself import the maltol into the United States. Anhui sells the maltol in China to another Chinese corporation known as Sinochem, which in turn sells to F & S, a Delaware corporation that imports the maltol into the United States.

Anhui moves to dismiss the patent claim against it for failure to state a claim on the ground that 35 U.S.C. § 271(g) does not apply to a foreign manufacturer who does not itself import the allegedly infringing product into the United States. Pfizer argues that § 271(g) was enacted to target, among others, a foreign manufacturer such as Anhui.

■  35 U.S.C. § 271(g) states in relevant part:

> Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, sale, or use of the product occurs during the term of such process patent.

■  Prior to the enactment of § 271(g), a process patent holder had a remedy under the patent laws only if the unauthorized use of the its patented process occurred within the United States. A process patent holder had no remedy against a foreign company that manufactured goods using the patented process and subsequently imported the goods into the United States. Section 271(g) was enacted to provide such a remedy, in recognition of the fact that "[t]here is no logical reason to exclude from the ambit of patent infringement acts associated with the abuse of a United States process *as long as they occur within the reach of United States domestic law.*" H.R.Rep. No. 60, 100th Cong., 1st Sess. 6 (1987) (emphasis added).

■  Section 271(g) was not intended, and indeed there is serious doubt whether Congress would have the authority—except perhaps by treaty—to prevent the use of a U.S. patented process in another country. Thus, § 271(g) "will not give extraterritorial effect to U.S. law" and provides no remedy against foreign manufacturers whose infringing acts do not occur within the United States. S.Rep. No. 83, 100th Cong., 1st Sess. 48 (1987).

Pfizer contends that "Anhui is *exactly* the type of manufacturer Section 271(g) was designed to cover" because it manufactures its maltol products "with full knowledge of their importation and sale within the United States...." It urges a broad reading of the term "importer," as used in the statute, to include a foreign manufacturer who knowingly sells to an importer even though it does not itself import the product into the United States.

Pfizer's argument finds no support in the language of the statute, its legislative history or in the caselaw.

Section 271(g) states without qualification that "[w]hoever without authority *imports* into the United States or *sells or uses within the United States* a product which is made by a process patented in the United States" shall be liable for patent infringement. (Emphasis added.) Nothing in the language suggests that a foreign manufacturer, who does not import the product into the United States, may be liable simply because it can foresee that a buyer of its product may ultimately import it into the United States.

The House and Senate reports accompanying the Process Patents Amendments Act of 1987 are replete with commentary specifying that "the offending act is the importation of a product made through the use of a protected process patent or its subsequent sale within the United States." H.R.Rep. No. 60, 100th Cong., 1st Sess. 6. "Liability exists ... only if the importation, sale or use of the product occurs in the United States during the term of such process patent." *Id.* at 13. Moreover, in remarks made on the floor of the Senate, Senator Frank Lautenberg of New Jersey summed up the purpose of the legislation thus: "While U.S. courts may not reach a foreign manufacturer that has no presence in the United States, the bill would allow a patent owner to enforce its patent in the U.S. courts against the importer or seller of the foreign manufacturer's product." *Process Patent Amendments Act of 1987: Hearing on S. 568 Before the Subcomm. on Patents, Copyrights and Trademarks of the Senate Comm. on the Judiciary,* 100th Cong., 1st Sess. 21 (1987).

The decisions cited by Pfizer do not provide support for its suggested reading of § 271(g). One involves a Japanese manufacturer who itself imported the infringing product into the United States, *Allegheny Ludlum Corp. v. Nippon Steel Corp.,* 765 F.Supp. 224 (E.D.Pa.1991), another a domestic company that itself sold the infringing product in the United States, *Shamrock Technologies Inc. v. Precision Micron Powders Inc.,* 1991 WL 335362 (E.D.N.Y.1991). The defendants in both cases fall squarely within the language of § 271(g) that whoever "imports" or "sells" the product "within the United States" shall be liable. Although Pfizer selectively quotes from *Bristol–Myers Co. v. Erbamont Inc.,* 723 F.Supp. 1038, 1043 (D.Del.1989), that "Congress did not intend the term 'importation' to turn upon extremely intricate concepts of title and sales contracts," the *Erbamont* opinion ultimately concluded that the terms "importation" and "import" in § 271(g) "are to have their plain ordinary meaning of bringing goods into the United States from another country." *Id.*

Because Anhui has not brought its product into the United States from China, it is not an "importer" within the meaning of § 271(g) and, accordingly, its .motion to dismiss is granted. This disposition does not leave Pfizer without a remedy because F & S, the remaining defendant in this case and the actual importer of the maltol, is subject to liability under § 271(g) and Pfizer may secure full redress from F & S should infringment be established. Such a result is precisely in accordance with Congress' intent in enacting § 271(g) to hold an importer of an infringing product liable.

Anhui's motion to dismiss is granted. It is so ordered.